IN THE CIRCUIT COURT OF SEBASTIAN COUNTY, ARKANSAS
CIVIL DIVISION

LORIE CASEY                                                        PLAINTIFF

**CV-19-0357**

v.                          CV-19-_____

NEW PRIME, INC.,
PHILLIP KNIGHT, JR.,
AND JOHN DOES 1-5                                                  DEFENDANTS

---

# COMPLAINT

---

COMES now the Plaintiff, Lorie Casey, and for her cause of action against the
Defendants, states:

## THE PARTIES

1.      Lorie Casey was a citizen and resident of Sebastian County, Arkansas at the time
of the motor vehicle collision hereinafter described.

2.      New Prime, Inc. is a corporation organized in Nebraska and registered to do
business in Arkansas.  Its agent for service of process is Incorp Services, Inc., 4250 Venetian
Lane, Fayetteville, Arkansas 72703.  It is engaged in the business of interstate trucking.

3.      Phillip Knight, Jr. was a citizen and resident of Springfield, Missouri at the time
of the motor vehicle collision hereinafter described.

4.      At all times mentioned in this Complaint, Phillip Knight, Jr. was an agent,
servant, employee, and/or statutory employee of New Prime, Inc.

5.      On information and belief, Phillip Knight resides at 2610 N. Glenstone Avenue,
Springfield, Missouri 65803.

6.      Lorie Casey must file suit against New Prime, Inc. and Phillip Knight, Jr. because

a direct action against their insurer, Cottingham & Butler Insurance Company, is prohibited by law.[1]

7.    The fictitious John Doe Defendants, whether singular or plural, are those entity or entities, or individual or individuals, who are or may be liable to Lorie Casey for the wrongful conduct described herein, or who may be responsible for the damages sustained by Lorie Casey as described herein.  Lorie Casey avers that the identities of these fictitious party defendants are unknown to Lorie Casey at this time, or if their names are known to Lorie Casey, that their identities as proper defendants are not known to Lorie Casey at this time, and that their true names will be substituted by amendment when ascertained.

8.    Plaintiff's attorney's affidavit about the John Doe Defendants is included below.

## JURISDICTION AND VENUE

9.    This is an action arising from a motor vehicle collision that occurred in Sebastian County, Arkansas, when Phillip Knight, Jr. was negligent in causing the collision that is the subject of this action, and his tortious acts are imputed to his employer, New Prime, Inc.

10.    This Court has general personal jurisdiction over New Prime, Inc. because it is a corporation registered to do business within the state of Arkansas and has a  principal place of business in Fayetteville, Arkansas; and it conducts business in Arkansas and operates its big trucks and trailers throughout Arkansas.

---

[1] Ark. Code Ann. § 23-89-210; *Carter v. Bush*, 296 Ark. 261, 267, 753 S.W.2d 534, 537 (1988); *Savage v. Spicer*, 235 Ark. 946, 950, 362 S.W.2d 668, 670-71 (1962); *see generally*, Nathan Price Chaney, *A Survey of Bad Faith Insurance Tort Cases in Arkansas*, 64 Ark. L. Rev. 853 (2011).

11.     This Court has jurisdiction over the parties hereto, jurisdiction of the subject matter hereof,[2] and venue is proper.[3]

## THE CAUSE OF ACTION

12.     According to the Arkansas State Police, approximately 58,000 preventable motor vehicle collisions occur every year.[4]

13.     On April 22, 2016, Lorie Casey traveling west on Denver Street driving a 2002 Mercedes C240, and had stopped at the intersection of Denver Street and Highway 71.  The light turned green at the intersection, and Ms. Casey began to enter the intersection.

14.     The photograph below is a fair and correct portrayal of the direction of travel Lorie Casey was facing:



---

[2] Ark. Const. Art. 2 § 7; Ark. Const. Amend. 80 § 6; and Ark. Code Ann. § 16-13-201.

[3] Ark. Code Ann. § 16-60-112(a).

[4] *See* Arkansas Traffic Crash Statistics published by the Arkansas State Police, available at asp.arkansas.gov/services-and-programs/detail/highway-safety-office (last visited June 13, 2017).

15.     Phillip Knight, Jr. was traveling north on U.S. Highway 71 driving a 2014 Freightliner semi-truck, and was approaching a red light on Highway 71 at the intersection of Highway 71 and Denver Street.

16.     The photograph below is a fair and correct portrayal of the direction of travel Phillip Knight, Jr. was facing:



17.     The photograph below is a fair and correct portrayal of the intersection described above:



4

18.     The gross vehicle weight rating of Lorie Casey's vehicle was approximately 3,310 pounds.

19.     The gross vehicle weight rating of Phillip Knight's semi truck was approximately 66,000 pounds.

20.     Phillip Knight, Jr. failed to stop at the red light, going into the intersection and hitting Ms. Casey's vehicle on the front driver's side, causing a violent and forceful impact.

21.     Phillip Knight's conduct gave rise to an appreciable risk of injury to other motorists, including but not limited to Lorie Casey. [5]

22.     Phillip Knight, Jr. knew or ought to have known his conduct would probably result in injury, yet Phillip Knight, Jr. continued to run through the red light anyway.

23.     At all times Lorie Casey's vehicle was operated in a safe and prudent manner.

24.     Until he collided with her vehicle, Lorie Casey was not aware Phillip Knight's big truck was going to collide with her vehicle.

25.     The significant impact from the collision hurt Lorie Casey and caused the injuries and damages to Lorie Casey that are described below.

26.     Lorie Casey had immediate back pain, neck pain, headache, and mental confusion following the collision.

27.     The greater weight of Phillip Knight's big truck made Lorie Casey more susceptible to injury.

28.     Lorie Casey being unaware of the impending collision made her more susceptible to injury.

---

[5] *Hill v. Wilson*, 216 Ark. 179, 183, 224 S.W.2d 797, 800 (1949).

29.     Following the collision, Lorie Casey received reasonable and necessary medical treatment for her injuries as a result of the collision.

30.     Lorie Casey's injuries sustained in the collision were and continue to be exacerbated by other physically demanding activities such as working and spending time with her family, previously enjoyed without pain before the collision.

31.     Due to the injuries she sustained in the collision, Lorie Casey received reasonable and necessary medical treatment for exacerbations of her collision related injuries.

32.     This is consistent with the majority of acceleration/deceleration injuries, which result in non-surgical clinical instability, a condition characterized by periods of relative remission interspersed with bouts of painful dysfunction.

33.     Following the collision, x-ray testing indicated Lorie Casey had excessive movement in her spine, and she was ultimately diagnosed with a 40% whole person impairment rating according to the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (5th ed. 2001).

34.     The diagnosis based on the x-ray testing was a true and correct diagnosis of Lorie Casey's injuries as a result of the collision.

35.     On July 8, 2016, a cervical MRI test indicated Lorie Casey has a reversal of the normal cervical lordosis.

36.     This finding indicates a poorer prognosis for Lorie Casey's recovery and a significant injury.

6

37.    Because Lorie Casey's normal cervical lordosis did not return within 6 months following the collision, this condition is permanent, and restoration to her pre-injury status will not occur.

38.    The cervical MRI test indicated Lorie Casey has a loss of the anatomic relationship of C1 and C2 consistent with atlantoaxial rotatory instability/insuffiency; loss of the normal collagenous architecture of the posterior atlantoaxial ligament; loss of the normal collagenous architecture of the anterior dura mater/tectorial membrane; loss of the normal longitudinal architecture of the posterior dura mater/posterior atlanto-occipital membrane; asymmetry of the longitudinal collagenous architecture of the alar ligaments; asymmetric widening of the left lateral dental interval consistent with disruption of the static stabilization mechanism of the craniocervical junction; and asymmetry of the transverse bands of the cruciform ligament.

39.    The cervical MRI test indicated Lorie Casey had disc involvement at the C2-3, C3-4, C4-5, C5-6, C6-7, and C7-T1 levels in her cervical spine.

40.    The cervical MRI test indicated the torn spinal ligaments in Lorie Casey's spine caused gravity dependent instability, which resulted in Lorie Casey's lower brain extending down into the base of her skull.

41.    The diagnosis based on the cervical MRI of July 8, 2016 was a true and correct diagnosis of Lorie Casey's injuries as a result of the collision.

42.    On July 8, 2016, Lorie Casey also had an MRI of her brain.  This brain MRI showed the encroachment by the cerebellar tonsils on the foramen magnum constituting a

"Chiari 0" anatomy as discussed above. Additionally this MRI showed a distention of the CSF spaces in the Meckel cave regions directly correlated with intracranial pressure.

43.     The white matter hyperintensified in the periventricular region was noted to be a consequence of the increased intraventricular pressure with resultant transudation of CSF through the ependymal lining into the perivenular spaces. The radiologist further noted left vertebral dominant, ectatic vertobrobasilar system with evidence of vascular loops in the distribution of the exit root zones of adjacent nerves predisposing Casey to neurovascular conflict.

44.     The MRI also showed "partial empty sella," which occurs concomitantly in patients with cerebellar tonsillar ectopia as seen in Casey, associated with increased intracranial pressure due to the disturbance of CSF homeostatis.

45.     Lorie Casey has received chiropractic and medical treatment, and coped with the pain from her collision injuries by taking Tylenol and Ibuprofen; using home therapies; performing stretching exercises; learning to deal with her physical limitations by restricting her activities; avoiding strenuous physical activities; carefully monitoring what she lifts; and taking stretch breaks when traveling by motor vehicle. She is limited in her ability to take pain management medications, as she only has one kidney.

46.     Prior to the collision, Lorie Casey enjoyed working, spending time with her family, and actively participating in her community. As a result of the collision, Lorie Casey is no longer physically able to participate in these activities without them causing pain.

8

47. As a result of the collision, Lorie Casey has been unable to live her life without added inconvenience or diminution of physical vigor, which would not have occurred had the wreck never happened.

## COUNT I - MOTOR CARRIER INDEPENDENT DIRECT LIABILITY

48. Upon information and belief, the above described collision and resulting damages hereinafter described were legally and proximately caused by the negligent acts and/or omissions solely on the part of New Prime, Inc., including, but not limited to:

  A. Negligently hiring[6], training[7], supervising[8], and retaining Defendant Knight as a commercial driver to operate its big trucks;

  B. Negligently entrusting its Freightliner big truck to Defendant Knight;[9]

  C. Negligently failing to create and maintain adequate policies, practices and procedures in place to safely operate its big trucks, to include but not be limited to failing to train, educate, direct, prepare, set policy or give guidance to its drivers with respect to texting and driving, not conducting periodic audits of its drivers' status logs to prevent hours-of-service violations, and failing to train its drivers about the duties imposed by the FMCSA.[10]

[6] 49 C.F.R. §391.21 (Application for employment of commercial truck drivers.)

[7] 49 C.F.R. §383.113 (Required skill for commercial truck drivers.)

[8] 49 C.F.R. §395.3 (Maximum driving time for property carrying vehicles), 49 C.F.R. §395.8 (Driver's record of duty status), 49 C.F.R. §390.11 (Motor carrier to require observance of driving regulations.)

[9] AMI Civ. 608.

[10] These claims are not subject to dismissal in the event the motor carrier admits *respondeat superior* liability for its truck driver's negligence per *Elrod v. G&R Constr. Co.*, 275 Ark. 151, 628 S.W.2d 17 (1982). *See McLane v. Rich Mountain Transportation, Inc.*, 2012 U.S. Dist. Lexis 111885 (E.D. Ark. 2012); *Regan v. Dunaway Timber Company*, 2011 U.S. Dist. LEXIS 127921 (W.D. Ark. 2011); *Brantley v. UPS Ground Freight, Inc.*, Opinion by Judge D.P. Marshall, Jr. in No. 3:16-cv-00352 (E.D. Ark. 2019).

9

D.  Negligently delegating, or attempting to delegate, safety responsibilities to Defendant Knight;

E.  Directing, permitting, and authorizing unsafe use of its Freightliner big truck under the circumstances;

F.  Negligently directing, permitting, and authorizing operation of the Freightliner big truck in violation of rules, regulations, standard operating procedures, safety procedures or protocols, and laws designed for the safe operation of a commercial big truck transport;

G.  Failing to maintain its Freightliner big truck in proper working order;

H.  Failing to use ordinary care under the circumstances;[11] and

I.  Other act of negligence and/or fault by New Prime, Inc., which may be proven at the trial hereof, all of which are in violation of the dictates of common sense, the rules of the road, and the statutes and/or ordinances of the State of Arkansas and/or the United States, all of which are plead herein as if copied *in extenso*.

## COUNT II - PERSONAL INJURY

## DUTIES OWED BY PHILLIP KNIGHT, JR.

49.    Phillip Knight, Jr. was required to follow the traffic safety rule of keeping a proper lookout for the safety of Lorie Casey and others, both before and at the time of the collision.[12]

---

[11] AMI Civ. 305.

[12] AMI Civ. 901.

10

50.     Phillip Knight, Jr. was required to follow the traffic safety rule of driving at a reasonable speed for the safety of Lorie Casey and others, both before and at the time of the collision.[13]

51.     Phillip Knight, Jr. was required to follow the traffic safety rule of keeping his vehicle under proper control for the safety of Lorie Casey and others, both before and at the time of the collision.[14]

52.     Phillip Knight, Jr. was required to follow the traffic safety rule to not recklessly drive his vehicle and/or indicate a wanton disregard for the safety of Lorie Casey and others, both before and at the time of the collision.[15]

53.     Phillip Knight, Jr. was required to follow the traffic safety rule to have his vehicle equipped with brakes adequate to control the movement of his vehicle for the safety of Lorie Casey and others, both before and at the time of the collision.[16]

54.     Phillip Knight, Jr. was required to follow the traffic safety rule to have his vehicle equipped with brakes adequate to stop his vehicle for the safety of Lorie Casey and others, both before and at the time of the collision.[17]

55.     Phillip Knight, Jr. was required to follow the traffic safety rule to have his vehicle equipped with brakes adequate to hold his vehicle for the safety of Lorie Casey and others, both before and at the time of the collision.[18]

---

[13] AMI Civ. 901; Ark. Code Ann. § 27-51-201.

[14] AMI Civ. 901.

[15] Ark. Code Ann. § 27-50-308.

[16] Ark. Code Ann. § 27-37-501.

[17] Ark. Code Ann. § 27-37-501.

[18] Ark. Code Ann. § 27-37-501.

56.     Phillip Knight, Jr. was required to follow the traffic safety rule of obeying a traffic control stop light for the safety of Lorie Casey and others, both before and at the time of the collision.[19]

57.     Phillip Knight, Jr. was required to follow the traffic safety rule of using ordinary care for the safety of Lorie Casey and others, both before and at the time of the collision.[20]

58.     Phillip Knight, Jr. was not allowed to needlessly endanger Lorie Casey or anyone else by violating one or more the traffic safety rules listed above.

## DUTIES VIOLATED BY PHILLIP KNIGHT, JR.

59.     At the time of the collision, Phillip Knight, Jr. violated the duty to follow the traffic safety rule of keeping a proper lookout, which needlessly endangered the safety of Lorie Casey and others.[21]

60.     At the time of the collision, Phillip Knight, Jr. violated the duty to follow the traffic safety rule of driving at a reasonable speed, which needlessly endangered the safety of Lorie Casey and others.[22]

61.     At the time of the collision, Phillip Knight, Jr. violated the duty to follow the traffic safety rule of keeping his vehicle under proper control, which needlessly endangered the safety of Lorie Casey and others.[23]

62.     At the time of the collision, Phillip Knight, Jr. violated the duty to follow the traffic safety rule to not drive recklessly his vehicle and/or indicate a wanton disregard for the

---

[19] Ark. Code Ann. § 27-52-503.

[20] AMI Civ. 305.

[21] AMI Civ. 901.

[22] AMI Civ. 901; Ark. Code Ann. § 27-51-201.

[23] AMI Civ. 901.

12

safety of Lorie Casey and others, which needlessly endangered the safety of Lorie Casey and others.[24]

63.    Phillip Knight, Jr. violated the duty to follow the traffic safety rule of obeying a traffic control stoplight, which needlessly endangered the safety of Lorie Casey and others.[25]

64.    At the time of the collision, Phillip Knight, Jr. violated the duty to follow the traffic safety rule of using ordinary care, which needlessly endangered the safety of Lorie Casey and others.[26]

65.    Upon information and belief, Phillip Knight, Jr., operated his vehicle in violation of rules, regulations, standard operating procedures, safety procedures or protocols, and laws designed for the safe operation of commercial big truck transport.

66.    Upon information and belief, Phillip Knight, Jr., failed to maintain his vehicle in proper working order.

67.    Upon information and belief, Phillip Knight, Jr., failed to abide by generally accepted practices of commercial drivers.

68.    At the time of the collision, Phillip Knight, Jr. needlessly endangered the safety of Lorie Casey and other motorists by failing to follow one or more of the traffic safety rules listed above.

## IMPUTED VICARIOUS LIABILITY

69.    At all times material hereto, it is believed that the separate defendant, New Prime, Inc., was the employer of or directed the control of Defendant Phillip Knight, Jr., as its big truck

---

[24] Ark. Code Ann. § 27-50-308.

[25] Ark. Code Ann. § 27-52-503.

[26] AMI Civ. 305.

commercial driver and is liable for the negligent acts of Defendant Phillip Knight, Jr. under the doctrine of respondeat superior, the law of agency, contract, DOT regulations, and other imputed vicarious liability principles.

70.    At all times mentioned herein in this Complaint, Phillip Knight, Jr. was acting during and within the course and scope of his agency, employment, joint employment, statutory employment, and/or under the joint and/or direct control of the Defendant, New Prime, Inc.

## CAUSATION OF PLAINTIFF'S INJURIES AND DAMAGES

71.    The injuries and damages sustained by Lorie Casey, more particularly described below, were produced in a natural and continuous sequence from New Prime, Inc.'s and Phillip Knight, Jr.'s violation of one or more of their duties and traffic safety rules listed above.[27]

72.    The injuries and damages sustained by Lorie Casey were a probable consequence from New Prime, Inc.'s and Phillip Knight, Jr.'s violation of one or more of their duties and traffic safety rules listed above.[28]

73.    The injuries and damages sustained by Lorie Casey were more than merely possible from New Prime, Inc.'s and Phillip Knight, Jr.'s violation of one or more of their duties and traffic safety rules listed above.

74.    New Prime, Inc.'s and Phillip Knight, Jr.'s violation of one or more of their duties and the traffic safety rules listed above created possibilities of danger so many and apparent as to

---

[27] AMI Civ. 501.

[28] *Ouachita Wilderness Inst. v. Mergen*, 329 Ark. 405, 415, 947 S.W.2d 780, 785 (1997).

14

entitle Lorie Casey to be protected against the violation of one or more of their duties and traffic safety rules listed above, even if the harm was unintended.[29]

75.    The consequences to Lorie Casey as a result of New Prime, Inc.'s and Phillip Knight, Jr.'s violation of one or more of their duties and traffic safety rules listed above were within the range of probability as viewed by an ordinary person.[30]

76.    New Prime, Inc. and Phillip Knight, Jr. should have foreseen and anticipated that a violation of one or more of their duties and traffic safety rules listed above would constitute an appreciable risk of harm to others, including Lorie Casey.[31]

77.    New Prime, Inc.'s and Phillip Knight, Jr.'s violation of one or more of their duties and traffic safety rules listed above was a substantial factor in, and worked together to cause the injuries and damages sustained by Lorie Casey.[32]

78.    If New Prime, Inc. and Phillip Knight, Jr. had not violated one or more of their duties and traffic safety rules listed above, then the injuries and damages sustained by Lorie Casey would not have occurred.[33]

---

[29] *Cobb v. Indian Springs, Inc.*, 258 Ark. 9, 23, 522 S.W.2d 383, 390 (1975), Fogelman, J., concurring (the plaintiff "must show that the act as to him had possibilities of danger so many and apparent as to entitle him to be protected against the doing of it though the harm was unintended.") (quoting *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928)); *Jordan v. Adams*, 259 Ark. 407, 412, 533 S.W.2d 210, 212 (1976) (same).

[30] *Alfrey Heading Co. v. Nichols*, 139 Ark. 462, 468, 215 S.W. 712, 715 (1919); *Hays v. Missouri Pac. R.R. Co.*, 208 Ark. 370, 373, 186 S.W.2d 780, 782 (1945); *Jordan v. Adams*, 259 Ark. 407, 411-12, 533 S.W.2d 210, 212-13 (1976); *Wallace*, 268 Ark. at 208, 600 S.W.2d at 9; *Johnson*, 345 Ark. at 482, 49 S.W.3d at 648; *Coca-Cola Bottling Co. v. Gill*, 352 Ark. 240, 255, 100 S.W.3d 715, 724-25 (2003); and *R&L Carriers Shared Servs, LLC v. Markley*, 2017 Ark. App. 240 at 7-8, 520 S.W.3d 268, 275 (2017) ("*Markley*").

[31] *Markley*, 2017 Ark. App. 240 at 7-8, 520 S.W.3d at 275; *Ethyl Corp. v. Johnson*, 345 Ark. 476, 482-83, 49 S.W.3d 644, 648-49 (2001) ("*Johnson*"); *Regions Bank & Trust v. Stone County Skilled Nursing Facility, Inc.*, 345 Ark. 555, 568, 49 S.W.3d 107, 116 (2001); *State Farm Mut. Auto. Ins. Co. v. Pharr*, 305 Ark. 459, 464, 808 S.W.2d 769, 771-72 (1991) (following *Larson Machine, Inc. v. Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980) ("*Wallace*"); *Hill*, 216 Ark. at 183, 224 S.W.2d at 800; *Ben M. Hogan Co. v. Krug*, 234 Ark. 280, 285, 351 S.W.2d 451, 453-54 (1961).

[32] AMI Civ. 502; *Woodward v. Blythe*, 249 Ark. 793, 462 S.W.2d 205 (1971).

[33] AMI Civ. 501.

## COMPENSATORY DAMAGES SUSTAINED BY PLAINTIFF

79.     The injuries and damages sustained by Lorie Casey as a result of New Prime Inc's

and Phillip Knight, Jr.'s violations of one or more of their duties and traffic safety rules listed

above, include but are not limited to the following:

A.     Serious and permanent bodily injuries to Lorie Casey's neck, back, brain, and other parts of her body, which is a life-altering event causing Lorie Casey to lose the ability to enjoy a normal quality of life, and depriving her of the right to live her life in comfort and ease without added inconvenience or diminution of physical vigor;[34]

B.     Aggravation of a condition(s) already then existing at the time of the collision that predisposed Lorie Casey to injury to a greater extent than another person;[35]

C.     Medical expenses incurred in the past and reasonably expected to be incurred in the future, and transportation expenses to obtain such medical treatment;[36]

D.     Physical pain and suffering experienced in the past and reasonably expected to be experienced in the future;[37]

---

[34] AMI Civ. 2202; *Sanson v. Allinson*, 2014 Ark. App. 619, 447 S.W.3d 151; *Gross & Janes Co. v. Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795 ("*Brooks*"); *Graftenreed v. Seabaugh*, 100 Ark. App. 364, 268 S.W.3d 905 (2007); *Fayetteville Diagnostic Clinic v. Turner*, 344 Ark. 490, 42 S.W.3d 420 (2001) ("*Turner*"); *Smith v. Galaz*, 330 Ark. 222, 953 S.W.2d 576 (1997);*Wheeler v. Bennett*, 312 Ark. 411, 849 S.W.2d 952 (1993); *Adkins v. Kelley*, 244 Ark. 199, 424 S.W.2d 373 (1968) (quoting Henry Woods, *Earnings and Earning Capacity as Elements of Danger in Personal Injury Litigation*, 18 Ark. L. Rev. 304, 305 (1964)).

[35] AMI Civ. 2203; *Sanson*, 2014 Ark. App. 619, 447 S.W.3d 151; *Smith*, 330 Ark. 222, 953 S.W.2d 576; *Primm v. U.S. Fid. & Guar. Ins. Corp.*, 324 Ark. 409, 922 S.W.2d 319 (1996); *Owen v. Dix*, 210 Ark. 562, 196 S.W. 319 (1946); *see also Kudabeck v. Kroger Co.*, 338 F.3d 856 (8th Cir. 2003); *Tedder v. Am. Railcar Indus.*, 739 F.3d 1104 (8th Cir. 2014).

[36] AMI Civ. 2204; *Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795; *Graftenreed*, 100 Ark. App. 364, 268 S.W.3d 905; *Turner*, 344 Ark. 490, 42 S.W.3d 420; *Wal-Mart Stores, Inc. v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991); *Honeycutt v. Walden*, 294 Ark. 440, 743 S.W.2d 809 (1988); *Matthews v. Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983); *Williams v. Gates*, 275 Ark. 381, 630 S.W.3d 34 (1982); *Haney v. Noble*, 250 Ark. 557, 466 S.W.2d 467 (1971) (citing *Belford v. Humphrey*, 244 Ark. 211, 424 S.W.2d 526 (1968)).

[37] AMI Civ. 2205; *Turner*, 344 Ark. 490, 42 S.W.3d 420; *Smith*, 330 Ark. 222, 953 S.W.2d 576; *RLI Ins. Co. v. Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991) ("*Coe*"); *Bill Davis Trucking, Inc. v. Prysock*, 301 Ark. 387, 784 S.W.2d 755 (1990) ("*Prysock*"); *Handy Dan Home Improv. Center, Inc. v. Peters*, 286 Ark. 102, 689 S.W.2d 551 (1985) ("*Peters*").

E.     Loss of income in the past and reasonably expected to be experienced in the future;[38]

F.     Loss of earning capacity due to permanent physical impairment from the injuries caused by the collision;[39]

G.     Mental anguish experienced in the past and reasonably expected to be experienced in the future, which includes but is not limited to Lorie Casey's loss of quality of life due to permanent injuries causing chronic pain that limits her activities;[40]

H.     Mental anguish experienced in the past and reasonably expected to be experienced in the future, which includes New Prime, Inc.'s and Phillip Knight, Jr.'s violation(s) of their duties and traffic safety rules that protect us all listed above that caused Lorie Casey to sustain needless permanent injuries, and shattered Lorie Casey's trust that everyone will follow traffic safety rules, and causes her to fear it will happen again due to this trust being broken;[41] and

I.      The reasonable expense of any necessary help in Lorie Casey's home in the past, and reasonably certain to be required in the future, as a result of Lorie Casey's injuries.[42]

---

[38] AMI Civ. 2206; *Swenson v. Hampton*, 244 Ark. 104, 424 S.W.2d 165 (1968); *Cates v. Brown*, 278 Ark. 242, 645 S.W.2d 658 (1983); *Sharp v. Great Southern Coaches, Inc.*, 256 Ark. 773, 510 S.W.2d 266 (1974); *John Hancock Mut. Life Ins. Co. v. Magers*, 199 Ark. 104, 132 S.W.2d 841 (1939); Woods, *supra* n. 29, at 308-09.

[39] AMI Civ. 2207; *Sanson*, 2014 Ark. App. 619, 7, 447 S.W.3d 151; *Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795; *Graftenreed*, 100 Ark. App. 364, 268 S.W.3d 905; *Collins v. Hinton*, 327 Ark. 159, 937 S.W.2d 164; *Smith*, 330 Ark. 222, 953 S.W.2d 576; *Gipson v. Garrison*, 308 Ark. 344, 824 S.W.2d 829 (1992); *Prysock*, 301 Ark. 387, 784 S.W.2d 755; *West Union v. Vostatek*, 302 Ark. 219, 788 S.W.2d 952 (1990); *Honeycutt*, 294 Ark. 440, 743 S.W.2d 809; *Haney*, 250 Ark. 557, 466 S.W.2d 467; *Blissett v. Frisby*, 249 Ark. 235, 458 S.W.2d 735 (1970); *Hogan v. Hill*, 229 Ark. 758, 318 S.W.2d 580 (1958); *Britt Trucking Co. v. Ringgold*, 209 Ark. 769, 192 S.W.2d 532 (1946).

[40] AMI Civ. 2205; *Smith*, 330 Ark. 222, 953 S.W.2d 576; *Coe*, 306 Ark. 337, 813 S.W.2d 783; *Chicago, R.I. & P. Ry. Co. v. Caple*, 207 Ark. 52, 179 S.W.2d 151 (1944); *Scott-Burr Stores Corp. v. Foster*, 197 Ark. 232, 122 S.W.2d 165 (1938); Howard W. Brill, *Law of Damages* § 29 (5th ed. Thompson West 2004).

[41] AMI Civ. 2205; *Peters*, 286 Ark. 102, 689 S.W.2d 551.

[42] AMI Civ. 2209; *Brooks*, 2012 Ark. App. 702, 425 S.W.3d 795; *Carr v. Nance*, 2010 Ark. 497, 370 S.W.3d 826; *Jackson v. United States*, 526 F. Supp. 1149 (E.D. Ark. 1981), *aff'd*, 696 F.2d 999 (8th Cir. 1982); *Perkins Oil Co. of Del. v. Fitzgerald*, 197 Ark. 14, 121 S.W.2d 877 (1938).

## AMOUNT OF COMPENSATORY DAMAGES

80.    Lorie Casey's injuries and damages are in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases for which Lorie Casey should be awarded a judgment against Phillip Knight, Jr. in an amount to fully and fairly compensate her for each and every element of compensatory damages sustained.

## PUNITIVE DAMAGES

81.    Upon information and belief, in addition to the compensatory damages for actual losses and damages sustained by Lorie Casey, she should be awarded punitive damages, in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases, to punish New Prime, Inc. and to deter others from similar conduct, for New Prime's misconduct associated with its hiring, training, supervision, retention and entrustment of its big truck to Defendant Knight, because it knew or ought to have known, in the light of the surrounding circumstances, that its conduct would naturally and probably result in injury and damages and that it continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred.[43]

## DEMAND FOR JURY TRIAL

82.    Lorie Casey demands a jury trial for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

83.    Lorie Casey reserves the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

---

[43] AMI Civ. 2218.

18

WHEREFORE, Lorie Casey prays that *Summons* be issued for New Prime, Inc. and Phillip Knight, Jr., and that following a jury trial of this action, that Lorie Casey be awarded a judgment against New Prime, Inc., and Phillip Knight, Jr., jointly and severally, in such an amount that will fully and fairly compensate Lorie Casey for all of the above described damages, and in an amount in excess of that required for federal court jurisdiction in diversity of citizenship cases; that Lorie Casey recover all costs expended herein; and that Lorie Casey have and receive all other proper relief to which she may be entitled in the premises.

Respectfully Submitted,

Don P. Chaney, AR BIN 78027
S. Taylor Chaney, AR BIN 2010011
Chaney Law Firm, P.A.
P.O. Box 1405
Arkadelphia, AR  71923
Email: don@chaneylaw.com
Telephone: 870-246-0600
Telefax: 866-734-0971

Attorneys for Plaintiff

## AFFIDAVIT

I, Don P. Chaney, upon being first duly sworn, do state under oath that I am an attorney for Lorie Casey in this action, and state that it is my belief that the identity of one or more tortfeasors is or may be unknown with respect to the above described motor vehicle collision that occurred on April 22, 2016, and caused injuries and damages to Lorie Casey. For this reason, John Does 1-5 have been named as Defendants within the *Complaint* for the filing of the above styled action.  Upon determining the identity of each such tortfeasor, the *Complaint* shall be amended by substituting the real name for the pseudo-name.

Further, the Affiant sayeth not.

Dated this _19th_ day of April, 2019.

Don P. Chaney

STATE OF ARKANSAS      )
                       ) s.s.
COUNTY OF CLARK        )

## ACKNOWLEDGEMENT

Subscribed and sworn to before me, a Notary Public, by the within named Don P. Chaney, to me personally well known, for the uses and purposes therein mentioned and set forth.

Dated this _19th_ day of April, 2019.

_____

Notary Public

Notary Seal: _____

20